**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Katherine Joanne VOIGT,
Defendant–Appellant.**

No. 88–1821.

United States Court of Appeals,
Tenth Circuit.

June 7, 1989.

Kenneth P. Snoke, Asst. U.S. Atty. (Tony M. Graham, U.S. Atty., and Ron Wallace, Asst. U.S. Atty., with him on the briefs) for N.D.Okl., Tulsa, Okl., for plaintiff-appellee.

Wesley G. Gibson, Asst. Federal Public Defender for N.D. Okl., Tulsa, Okl., for defendant-appellant.

Before SEYMOUR, BARRETT and BRORBY, Circuit Judges.

BRORBY, Circuit Judge.

Ms. Voigt appeals her conviction of one count of conspiracy to violate 18 U.S.C. § 1344 (Supp. II 1984) in violation of 18 U.S.C. § 371 (1982), and forty-six counts of bank fraud in violation of 18 U.S.C. § 1344 (Supp. II 1984). The case against Ms. Voigt was tried to the same jury which convicted co-defendants Bruce Bonnett, Carroll Bernard, and Lester Dierksen of the same and related criminal offenses. *See United States v. Bonnett*, 877 F.2d 1450 (10th Cir.1989); *United States v. Bernard*, 877 F.2d 1463 (10th Cir.1989); and *United States v. Dierksen*, No. 88–1712 Order & Judgment (filed June 6, 1989).

Ms. Voigt asserts seven errors, four of which we addressed in *Bonnett*. In addition to the matters discussed in *Bonnett*, Ms. Voigt asserts three errors: (1) ineffective assistance of counsel; (2) jury disregard of instructions; and (3) admission of improper expert witness opinions. We AFFIRM for the reasons set forth in *Bonnett*, and also for the reasons discussed herein.

## I.

### *Ineffective Assistance of Counsel*

█ Ms. Voigt claims that her counsel, to alleviate severe migraine headaches, consumed and was under the influence of Demerol during most of the six-week trial. She argues trial counsel's continued representation while he was under the influence of Demerol was so inadequate as to amount to ineffective assistance of counsel, depriving Ms. Voigt of her Sixth Amendment rights. It appears this issue was not raised at the trial level and is before us for the first time. We are not persuaded by Ms. Voigt's argument.

Ms. Voigt states that Demerol is a "powerful depressant medication," but concedes in her brief: "It is unclear from the record how much counsel's performance and appellant Voigt's case was affected by [counsel's] heavy use of Demerol...." Ms. Voigt points to no citations from the record which directly support her assertions that counsel's performance was affected by the use of the medication; that counsel was taking medication or in what quantity; or the nature of the medication. Ms. Voigt asserts that her counsel performed *"under the influence of Demerol."* (Emphasis added.) This assertion is simply not supported by the facts. The record merely indicates that short continuances were granted on three occasions due to counsel's migraine headaches. It does not follow that counsel's performance was affected by the use of medication.

Ms. Voigt urges that her counsel's impairment is demonstrated by the following facts regarding his trial performance: (1) failure to argue for a severance; (2) inability to communicate with co-counsel due to medication; (3) failure to cross-examine a key government witness, Mr. Bill Martin; (4) failure to ask for a limiting instruction with regard to any of the Fed.R.Evid. 404(b) evidence stemming from government witnesses Brown, Jackson, Hammer, and the letter written by Edward L. Moore, plus "numerous documents and banking transactions"; (5) failure to ask for "an immediate limiting instruction at the time the [Rule] 404(b) material was offered that the evidence did not apply to appellant Voigt"; (6) decision "to put on no direct evidence" on behalf of Voigt; and (7) decision "to not place his client on the stand." We are not persuaded that Ms. Voigt was represented in a constitutionally defective manner.

In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court set forth the two elements that must be established to demonstrate counsel's assistance was so defective as to require the reversal of a conviction. First, it must be shown counsel committed serious errors so as to not be functioning as the "counsel" provided by the Sixth Amendment. *Id.* at 687, 104 S.Ct. at 2064.

To determine whether counsel's performance comported with the Sixth Amendment, the inquiry is whether the attorney's conduct is reasonable in light of all the circumstances of the case. *Id.* This is an objective standard based on whether the reasonable defense attorney would act in the same manner as the defense counsel in the situation being analyzed. *Id.* at 688, 104 S.Ct. at 2064. Second, it must be shown that counsel's performance was prejudicial to the defense. *Id.* at 687, 104 S.Ct. at 2064. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068.

Most recently in *United States v. Rantz,* 862 F.2d 808, 810 (10th Cir.), *cert. denied,* — U.S. ——, 109 S.Ct. 1554, 103 L.Ed.2d 857 (1989), we commented on *Strickland:*

> In order to find that counsel rendered ineffective assistance, it must be shown that counsel did not exercise "the skill, judgment and diligence of a reasonably competent defense attorney." *United States v. Afflerbach,* 754 F.2d 866, 870 (10th Cir.), *cert. den.,* 472 U.S. 1029, 105 S.Ct. 3506, 87 L.Ed.2d 636 (1985). There is a strong presumption that counsel provided effective assistance of counsel and petitioner has the burden of proof to overcome that presumption. *United States v. Cronic,* 466 U.S. 648, 658, 104 S.Ct. 2039, 2046, 80 L.Ed.2d 657 (1984).

Under these standards, Ms. Voigt's argument is unpersuasive.

■ The fact that counsel failed to argue for a severance in this case is of little import. Requests for severance were in fact made on behalf of Ms. Voigt, albeit by other counsel. The record does not establish what effect, if any, the purported inability to communicate with co-counsel may have had on the conduct and outcome of the trial. The failure to cross-examine a witness does not necessitate a finding of ineffective assistance of counsel. Ms. Voigt has not even shown how cross-examination might have changed the outcome of the trial. This decision could simply have been part of trial counsel's strategy. Further, the failure of counsel to seek limiting instructions concerning the Rule 404(b) evidence seems nearly insignificant when one realizes that a proper limiting instruction was in fact given. The failure to seek an immediate Rule 404(b) instruction concerning Rule 404(b) material will not be considered by this court when appellant fails to bring to our attention the specific evidence which necessitated such an instruction. Appellant's failure to offer direct evidence in her own behalf is not sufficient by itself to show ineffective assistance of counsel.

Ms. Voigt has not shown counsel failed to exercise the skill, judgment, and diligence of a reasonably competent defense attorney. She has not met her burden of demonstrating a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.

## II.

### *Jury Disregard of Instructions*

■ Ms. Voigt attached to her brief the affidavit of counsel for a co-defendant, Mr. Bernard, stating that Ms. Voigt was convicted due to her failure to take the witness stand.[1] Ms. Voigt asserts this affidavit

---

1. This affidavit, in its entirety, reads:

Affiant, being first duly sworn, of lawful age, attests and states as follows:

1. That she is a member in good standing of the Oklahoma Bar Association, having been admitted to the practice of law by the Supreme Court of the State of Oklahoma on April 22, 1977.

2. Affiant is the attorney of record for the defendant, Carroll G. Bernard, and has personal knowledge of all matters contained herein.

3. The defendant, Katherine Joanne Voigt, did not take the witness stand to testify in her own behalf during the trial proceedings in this case.

4. The members of the Jury were specifically instructed that the failure of any defendant to take the witness stand should not be considered by them in reaching a verdict in this matter.

5. That subsequent to the Jury's rendition of the verdict in this cause on February 27, 1988, counsel conducted an investigative inquiry.

gives rise to grounds for a new trial based on jury misconduct. During oral argument before this court, counsel for Mr. Bernard was asked if she had personally contacted the juror, and counsel admitted that she had done so.[2] Ms. Voigt has cited us to no authority to support her position concerning this issue.

Fed.R.Evid. 606(b) provides that a juror may not testify as to any matter occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind. The rule further provides that neither a juror's affidavit nor evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying may be received for these purposes. In *United States v. Miller,* 806 F.2d 223 (10th Cir.1986), we affirmed the trial court's denial of the defendant's motion to make inquiry of a juror who reportedly had told her pastor, in part, that she may have misunderstood the court's instructions and may have been unduly influenced by the other jurors. We stated: "It is settled law that juror testimony is inadmissible to impeach a verdict, except where the proffered testimony relates to 'whether *extraneous* prejudicial information' or any '*outside* influence was improperly brought to bear upon any juror.' Federal Rule of Evidence 606(b)...." *Id.* at 225 n. 2. Furthermore, in *United States v. Jelsma,* 630 F.2d 778 (10th Cir.1980), when appellant presented affidavits of jurors in an effort to impeach the verdict, we stated:

> Federal Rule of Evidence 606(b) specifically precludes judicial "inquiry into the validity of a verdict." For very good reasons, this court may not examine the factors "influencing [a juror] to assent to or dissent from the verdict." See *United States v. Greer,* 620 F.2d 1383, 1385 (10th Cir.1980). Appellant relies on Mr. Justice Cardozo's opinion in *Clark v. United States,* 289 U.S. 1, 53 S.Ct. 465, 77 L.Ed. 993 (1932), for authority to "let the light in" on jury deliberations. However, *Clark* involved the serious question, not present here, of a juror's fraudulent presence on the panel. Only then, once a prima facie case of fraud was presented, did the Court permit breach of the sanctity of the jury room. Rule 606(b) itself provides exceptions for determining "whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror." No such allegations have been made in this case.

*Id.* at 779. Ms. Voigt is now apparently asking us to disregard Rule 606(b), and this we refuse to do. Inquiries into jury verdicts and deliberations are looked upon with strong disfavor. *Miller; Jelsma.* Counsel's argument is specious and frivolous.

## III.

### *Improper Opinions of Expert Witness*

During its case in chief, the government called Brenda Lake Weed as a witness. Mrs. Weed testified she had a bachelor's degree in management; worked for the Comptroller of the Currency's office for over nine and one-half years; and at the time of trial was a commissioned bank examiner, level three. She spent the majority of her time examining troubled banks; received special recognition for her contribu-

---

6. That contrary to the instructions of the Jury, Affiant learned through her investigative inquiry that the "decisive basis" of the verdict against the defendant, Katherine Joanne Voigt, was her failure to take the witness stand and testify during the trial proceedings.

7. That the findings of counsels' investigative inquiry were communicated to the attorney of record for Katherine Joanne Voigt, Mr. Larry Tedder, both by written correspondence and oral communication on February 29, 1988.

8. That the investigative inquiry conducted by counsel was not for the purpose of harassment, but in preparation for the sentencing and appellate phase of these proceedings to determine the existence or nonexistence of error in the verdict.

2. Appellee charges this contact violated local court rules and asserts that counsel for Mr. Bernard reported this transgression by letter to the trial court. This court has no knowledge as to what action, if any, was taken by the trial court.

tion to examinations; attended many bank examination schools; and instructed at three or four such schools. She was the examiner in charge who headed the team of bank examiners that uncovered the evidence forming the bases of the criminal charges in this case.

Ms. Voigt asserts "the expert witness, Mrs. Weed, repeatedly testified that check kites were 'illegal'"; that the activity of the defendants constituted a "check kite"; gave legal definitions of "check kite," "insider," and "legal lending limit"; testified that defendant's conduct was blatant, outright, obvious, unsafe and unsound banking practice; and used the terms "violation of federal law," "violation of Reg O," "violations of 31 CFR 103," and "it's the law." Appellant's brief at 32. We note that Ms. Voigt, in making these assertions, cites this court to approximately 400 pages of transcript and identifies no particular instance. We also note that counsel has cited us to no rulings of the trial court concerning these claimed errors. It is not the task of this court to search the record for error. Nevertheless, we have carefully reviewed the transcript as requested by counsel and find no error. Again, the argument has no merit.

Ms. Voigt further asserts:

Mrs. Weed was also allowed to give her own opinion as to the truthfulness of appellant Voigt and co-defendant Bernard.... Mrs. Weed was allowed to state her opinion that Ms. Voigt was "evasive" and that Mr. Bernard knew that the check kiting going on in Mr. Bonnett's account was wrong.

Appellant's brief at 33.

At trial, the bank examiner testified regarding a conversation she had with Ms. Voigt. She asked Ms. Voigt about her practice of holding return items of Mr. Bonnett in her drawer for several days and then processing the items when funds were available. The examiner stated that upon being questioned about these items, Ms. Voigt "basically just referred me to Mr. Bernard and she was very evasive...." Counsel for co-defendant Bonnett objected and moved to strike the response. The

court granted the motion and admonished the jury to "disregard the last statement volunteered by the witness." Ms. Voigt has failed to point out to us what error was committed by the trial court, and we can find none.

We have reviewed Ms. Voigt's assertions of error, and in carefully reviewing the testimony, we find no error. Ms. Voigt's claims lack merit and do not warrant further discussion. For the reasons stated in *Bonnett,* and for the further reasons stated herein, the verdict of the jury and the actions of the trial court are AFFIRMED.