Michael Brian PENDERGAST,
Petitioner–Appellant,

v.

Anthony C. NEWLAND, Warden
Respondent–Appellee.

No. 01–15221.
D.C. No. CV 97–01226–GEB.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 3, 2001.

Decided Jan. 8, 2002.

Before BRIGHT,* and B. FLETCHER, and FISHER, Circuit Judges.

* Honorable Myron H. Bright, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

MEMORANDUM [1]

Michael Pendergast, a California State prisoner, appeals the district court's denial of his 28 U.S.C. § 2254 petition for writ of habeas corpus. We have jurisdiction under 28 U.S.C. § 2253. We review the district court's denial of a habeas petition *de novo*. *Alvarado v. Hill*, 252 F.3d 1066, 1068 (9th Cir.2001).

Pendergast's habeas petition was filed after the April 24, 1996, effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), so we apply that statute to this case. *Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). Under AEDPA, in order to succeed, Pendergast must demonstrate that the state court adjudication of his claims on their merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Van Tran v. Lindsey*, 212 F.3d 1143, 1149 (9th Cir.) *cert. denied*, 531 U.S. 944, 121 S.Ct. 340, 148 L.Ed.2d 274 (2000). We conclude that Pendergast's claims fail to reach the standard articulated in *Williams*, and affirm.

Because the parties are familiar with the facts of this case, we recite here only those facts necessary to explain our decision.

A certificate of appealability was granted on the question whether Pendergast was denied his Sixth Amendment right to an impartial jury because of jury misconduct during *voir dire* and deliberations.

1. This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Cir. R. 36–3.

He points to four instances of misconduct in his habeas petition: (1) that juror W failed to disclose on his juror questionnaire and during *voir dire* a prior personal experience in which he misdescribed arson suspects; (2) that juror W discussed the experience with other jurors during their deliberations; (3) that juror W performed a "vanishing point" experiment during deliberations; and (4) that during their deliberations a number of jurors improperly mentioned Pendergast's failure to testify at trial.

Before discussing each of these claims *seriatim*, we address the threshold question of whether the juror affidavits submitted by Pendergast as evidence in support of his petition are admissible, and if so for what purpose. Under Rule 606(b), Fed. R.Evid., upon any inquiry into the validity of a verdict "a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict ... or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror." Similarly, a juror's post-verdict affidavit is subject under Rule 606(b) to these same restrictions.

Because Pendergast alleges that three of the instances of misconduct constituted an "extraneous influence" on the jury, *Tanner v. United States*, 483 U.S. 107,

117–18, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987), we have examined the affidavits for the limited purpose of determining as a threshold matter whether that is so. *United States v. Keating*, 147 F.3d 895, 902 (9th Cir.1998) (noting "intrajury communications may constitute prejudicial extrinsic evidence sufficient to require a new trial.").

We find that none of the information provided in the affidavits demonstrates either juror dishonesty during *voir dire* or that any "extraneous prejudicial information" or "outside influence" was brought to bear on the jury.

I. *Juror W's Alleged Failure to Disclose Prior Experience*

 Juror W did not disclose, either on his questionnaire or at *voir dire*, a prior experience when, as a volunteer firefighter, he apparently misdescribed arson suspects by inaccurately recalling their height and weight in reporting to an investigating officer. In Pendergast's case, the victim had initially described the second suspect, whom the jury ultimately decided was Pendergast, as a person of average height and medium build when in fact Pendergast was a large man of 300 pounds, standing over six feet tall.[2]

In order to obtain a new trial on this claim, Pendergast "must first demonstrate that a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause. The motives for concealing information may vary, but only those reasons

---

**2.** Despite the discrepancy between the victim's description of Pendergast and Pendergast's actual physical characteristics, the prosecution put forward substantial evidence upon which the jury could reasonably find Pendergast guilty, as they did, of kidnapping for robbery, robbery, assault with a firearm,

and attempted possession of stolen property. Arresting officers testified, *inter alia*, that Pendergast was apprehended while climbing out a window with a bag containing a number of the handguns stolen during the robbery of the Vacaville, California Wal–Mart.

that affect a juror's impartiality can truly be said to affect the fairness of the trial." *McDonough Power Equip., Inc. v. Greenwood,* 464 U.S. 548, 556, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984).

Pendergast offers nothing to suggest that juror W failed to answer honestly any material question asked of him either on the questionnaire or during *voir dire.* Juror W stated on the questionnaire that he did not know whether "[he], a close friend, or relative" had previously been involved in a criminal case. Counsel did not pursue this equivocal answer during *voir dire.* Pendergast's argument that juror W should have volunteered the information at *voir dire* concerning his misdescription of arson suspects as evidence of bias is without merit. *Hard v. Burlington Northern Railroad,* 812 F.2d 482, 486 (9th Cir.1987) ("[j]urors must rely on their past personal experiences when hearing a trial and deliberating on a verdict" so long as those experiences are not related to the litigation).

Pendergast's claim falls far short of the standard required by *McDonough* and we reject it.

## II. *Juror W's Discussion of the Experience*

Pendergast objects that juror W's discussion during deliberations of his previous experience of misidentification constituted extraneous prejudicial information, and was "tantamount to a contrary expert opinion." This claim is similarly without merit.

A "juror's past personal experiences may be an appropriate part of the jury's deliberations," *United States v. Navarro–Garcia,* 926 F.2d 818, 821 (9th Cir.1991); 3 Mueller & Kirkpatrick ("Mueller"), Federal Evidence § 249, at 75 (2d ed.1994) (jurors may properly consider general knowledge with bearing on case before them),

though "relevant only for purposes of interpreting the record evidence." *Navarro,* 926 F.2d at 822.

Juror W's discussion of his past experience was clearly within the bounds of the record evidence properly before the jury during its deliberations. Pendergast's request for a new trial on this basis fails.

## III. *Juror W's "Experiment"*

■ According to juror affidavits submitted by Pendergast, during jury deliberations, juror W conducted an experiment for the purpose of illustrating the proposition that objects appear smaller when viewed at a distance. Specifically, juror W placed two pencils on a table, presumably of the same length, one behind the other. Jurors then viewed the pencils at eye level, from the side of the table, thereby learning the lesson that distance distorts one's perception of size.

Pendergast argues that this experiment constituted "prejudicial extraneous evidence." As the district court succinctly concluded, "the argument that prejudice resulted from jurors conducting an experiment confirming the hypothesis that objects which are close appear larger than objects which are far away is absurd." Any reasonable juror was already aware of this basic principle of perception before participating in juror W's experiment. While admissible for the purpose of determining whether the experiment constituted extrinsic evidence, 3 Weinstein's Federal Evidence ("Weinstein") § 606.04[4][a], at 606–28 to 606–30 (2d ed. 2000) ("Rule 606(b) would not render a witness incompetent to testify to juror irregularities such as … experiments"), the affidavits fail to show that the "experiment" constituted extraneous information in violation of Pendergast's Sixth Amendment rights.

Pendergast's request for a new trial on this basis also fails.

### IV. Jury Discussion of Pendergast's Failure to Testify

In the affidavits submitted by Pendergast, at least three jurors recall that during deliberations it was mentioned that Pendergast had failed to testify on his own behalf. Because the court had previously instructed the jury not to consider the fact that Pendergast failed to testify, Pendergast argues that the jury's violation of that instruction also violated the Sixth Amendment.

The post-verdict affidavits, submitted, *inter alia,* for the purpose of showing that the jury discussed Pendergast's failure to testify, are inadmissible under Rule 606(b) for that purpose because a defendant's failure to testify cannot constitute "extrinsic evidence." *See, e.g., United States v. Rodriquez,* 116 F.3d 1225, 1226–27 (8th Cir. 1997); *United States v. Martinez–Moncivais,* 14 F.3d 1030, 1037 (5th Cir.1994); *United States v. Voigt,* 877 F.2d 1465, 1468–69 (10th Cir.1989); *see also* Weinstein, § 606.04[3][a], n. 26, pp. 606–25 and 606–26 (evidence in the form of juror affidavits inadmissible under Rule 606(b) to show jury considered defendant's failure to testify; no circuit court ruling to the contrary); Mueller, § 249, at 75 (1994) ("[R]ule [606(b) ] bars proof that one or more jurors held it against the accused that he failed to take the stand").

We conclude that the district court was not in error in holding that the state court's decision to deny Pendergast's petition was neither contrary to federal law nor an unreasonable application of clearly established federal law.

AFFIRMED