**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Riley Mitchell JONES,
Defendant–Appellant.**

No. 86–2283.

United States Court of Appeals,
Tenth Circuit.

Aug. 5, 1988.

---

John E. Dowdell, of Norman, Wohlgemuth & Thompson, Tulsa, Okl., for defendant-appellant.

David O'Meilia, Asst. U.S. Atty., Tulsa, Okl. (Tony M. Graham, U.S. Atty., Susan W. Pennington, Asst. U.S. Atty., Tulsa, Okl., were on the brief), for plaintiff-appellee.

Before HOLLOWAY, Chief Judge, MCKAY, Circuit Judge, and BURCIAGA, District Judge.[*]

BURCIAGA, District Judge.

This appeal presents the issue of whether trial counsel's alleged failure to conduct a substantial investigation into Defendant–Appellant Riley Mitchell Jones' suggested defense and to adequately prepare for the presentation of that defense denied Jones his sixth amendment right to effective assistance of counsel.

Jones was charged and convicted of conspiracy to possess with intent to distribute a Schedule II controlled substance, amphetamine, in violation of 21 U.S.C. §§ 846 and 841(a)(1). After the jury rendered its verdict, Jones sought and received an order dismissing his trial counsel, Jo Stanley Glenn. Jones then requested a new trial on the grounds that he did not receive effective assistance of counsel. Jones now appeals the district court's order which found the representation by Ms. Glenn to fall well within the standards enumerated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). We find no error in the district court's order and therefore affirm.

### Ineffective Assistance of Counsel

█ ▪ The bench mark for judging a claim of ineffective assistance of counsel is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland v. Washington*, 466 U.S. at 688, 104 S.Ct. at 2064. The *Strickland* Court held that the proper standard for assessing attorney performance is that of reasonably effective assistance under prevailing norms. *Id.* at

___

[*] The Honorable Juan G. Burciaga, United States District Judge for the District of New Mexico, sitting by designation.

687–88, 104 S.Ct. at 2064–65. The *Strickland* Court cautioned that judicial scrutiny of counsel's performance must be highly deferential, and that every effort be made to eliminate the distorting effects of hindsight. *Id.* at 689, 104 S.Ct. at 2065. A defendant must first overcome the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* Second, the defendant must show that counsel's performance prejudiced the defense. This requires the defendant to show that counsel's errors were so serious as to deprive him of a fair trial; a trial whose result is reliable. *Id.* at 687, 104 S.Ct. at 2064.

Applying these principles we must first determine whether the trial court properly found that Glenn's conduct was reasonable. Apparently, Glenn's defense at trial consisted of denial of the charges and evidence presented by the government. Jones admits that Glenn often vigorously cross-examined the government witnesses, testing their veracity, credibility, and memory. Brief of Appellant at 4. Jones argues that Glenn's performance was deficient for failing to pursue the only plausible line of defense—lack of specific intent.

Jones alleges that Glenn's conduct was unreasonable because she failed to investigate potential witnesses suggested by Jones who would allegedly corroborate Jones' explanation of his association with the other alleged co-conspirators. Jones maintains that numerous doctors, and others, could substantiate Jones' actual physical and mental need for powerful drugs due to chronic back problems. Jones alleges that these potential witnesses would establish that he used strong drugs acquired from illicit sources. Jones argues that Glenn's failure to call these witnesses denied Jones the defense of the "impact of his chemical dependence on his ability to form the requisite specific intent." Brief of Appellant at 14.

Glenn's failure to interview any of the fifteen potential witnesses suggested by Jones is troublesome. The record before the Court gives little indication of Glenn's reason for this, although Jones' present attorney states by affidavit that Glenn believed the testimony could be elicited from Jones himself and apparently the potential witnesses were not deemed necessary. Jones maintains that he and Glenn had agreed that he would not testify at trial. Jones further states he was forced to testify because these potential witnesses were not called. Had Glenn interviewed any of these witnesses, her decision not to use the specific intent defense could be viewed as a tactical decision and within the wide range of reasonable professional assistance.

■ Glenn's complete failure to investigate may suggest that Jones has overcome the strong presumption that Glenn's assistance was reasonable. The Court, however, need not decide this prong of the inquiry in order to determine whether Jones was afforded ineffective assistance of counsel. A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. *Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069. Even if Glenn's representation fell below the prevailing norm, Jones must also prove this prejudiced his defense.

■ The purpose of the sixth amendment guarantee of counsel is to insure that defendants have the assistance necessary to justify reliance on the outcome of the proceeding. An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal trial if the error had no effect on the judgment. *Strickland,* 466 U.S. at 691–92, 104 S.Ct. at 2066–67. Thus, a defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. We find that Jones has not met his burden of showing the decision reached by the jury had a reasonable probability of being different absent his counsel's alleged errors of failing to investigate and pursue Jones' suggested defense.

Jones alleges that the witnesses he proposed could have testified to his "valid reason for drug use." Jones maintains that numerous doctors and others could substantiate his actual physical and mental need for powerful narcotics. According to the affidavits of record, Dr. Pentecost, a proposed witness, could have detailed Jones' chronic history of back problems and Jones' need for strong depressant medication. He also could have testified that at the time of Jones' alleged involvement with the amphetamine conspiracy, he was cut off from his source of prescribed medication and was referred to a pain center. Dr. Rodgers' testimony would have echoed Dr. Pentecost by detailing Jones' chronic back pain and indicating Jones had a predilection to use narcotics and medication to control this chronic pain. Jones argues this testimony would have explained his association with the other co-conspirators.

Although this testimony may explain why Jones was associated with the other co-conspirators, it does not necessarily indicate Jones lacked the specific intent to possess and distribute amphetamine. The proposed testimony details Jones' chemical dependence but does not indicate the impact of such dependency on his ability to form the essential intent nor does it establish that he did not appreciate the consequences of his actions.

Rather than providing a successful defense, the testimony proposed by Jones may have strengthened the government's case against him. Jones readily acknowledges the government's evidence connecting him to the conspiracy was substantial. Brief of Appellant at 3–4; Reply Brief of Appellant at 5 and 8. In addition, Jones himself states that when the doctors refused to prescribe further pain medication, he was forced to seek medication "on the street." Affidavit of Riley M. Jones. This line of testimony could strengthen the government's case against Jones by reinforcing his association with the co-conspirators rather than providing a viable defense. Therefore, Jones did not show that Glenn's failure to investigate and pursue Jones' suggested defense resulted in a reasonable probability that the result of his trial would have been different.

Even if we assume that Glenn's representation was deficient and fell below the prevailing norm, Jones has failed to establish the second prong of the *Strickland* inquiry—that Glenn's conduct prejudiced his defense.

We conclude the district court properly found that Jones received assistance of counsel which fell within the standards enumerated in *Strickland*. Further, there was no breakdown in the adversarial system such that the result cannot be relied upon. Accordingly, the district court's order denying Jones' motion for a new trial on the basis of ineffective assistance of counsel is affirmed.