**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Herbert G. MILLER, II,**
**Defendant–Appellant.**

**Nos. 84–2766, 85–2334.**

United States Court of Appeals,
Tenth Circuit.

July 5, 1990.

Charles J. Carroll of Dill and Dill, P.C. of Denver, Colo., for defendant-appellant.

Thomas M. O'Rourke, Asst. U.S. Atty., and Michael J. Norton, Acting U.S. Atty., Denver, Colo., for plaintiff-appellee.

Before HOLLOWAY, Chief Judge, and MCKAY, Circuit Judge, and GARTH, Senior Circuit Judge.*

GARTH, Senior Circuit Judge.

This appeal arises from the defendant Herbert Miller II's 18 U.S.C. § 1001 conviction for making fraudulent statements in an effort to deceive and obstruct the tax authorities. Because the merits of Miller's direct appeal (84–2776) were never decided by this Court for reasons stated hereinafter, we have before us as well an appeal (85–2334) from the denial of Miller's motion to vacate and set aside his conviction on grounds of ineffective assistance of counsel. We affirm both Miller's conviction at 84–2776 and the order denying his 28 U.S.C. § 2255 application to set aside his conviction (85–2334).

## I.

In a November 1984 bench trial before the district court for the District of Colorado (Carrigan, J.), Miller, a tax attorney and accountant, was convicted on three counts of making false statements in violation of 18 U.S.C. § 1001.[1] Miller had been found guilty of orchestrating the back-dating of deeds, pension plan reports and other financial documents in order to avoid tax liabilities.[2]

We have before us now a much delayed direct appeal of this conviction (84–2776) as well as Miller's appeal of the district court's subsequent denial of his application made under 28 U.S.C. § 2255 to set aside his conviction (85–2334). Both claims essentially rest on assertions raised by Miller's third attorney (Mr. Carroll) that Miller had received inadequate assistance of counsel at trial by his then counsel (Mr. Calder). An explanation of the procedural evolution of these appeals will be helpful in defining the issues before us.

## A.

Miller was convicted after a bench trial on November 26–27, 1984. On December 4, 1984 he filed motions for a new trial and/or a judgment notwithstanding the verdict (JNOV). These motions were denied on December 10, 1984. With the deadline for filing an appeal approaching, Miller on December 20, 1984 filed a notice of appeal from his conviction, as well as from the order denying him a new trial or JNOV.

---

* The Honorable Leonard I. Garth, United States Senior Circuit Judge for the Third Circuit Court of Appeals, sitting by designation.

1. 18 U.S.C. § 1001 (1976) "Statements or entries generally" reads as follows:

   Whoever, in any manner within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned no more than five years, or both.

2. The record reveals that Miller's secretaries back-dated documents at his instruction. While representing private parties before the United States Tax Court, Miller offered into evidence deeds and other documents verified and vouched for by him as a notary and purportedly dated September 3, 1980. In fact, these documents were falsely dated by two of his secretaries sometime in October 1982.

On March 15, 1985, Miller was sentenced to five years on each of the three counts on which he was convicted, to be served concurrently.

On April 4, 1985, Miller filed a motion to substitute new counsel for his original counsel. At about that time, the court ordered that Miller undergo psychiatric examination pursuant to a determination of his suitability for parole, 18 U.S.C. § 4205(d), and this Court then stayed Miller's direct appeal pending the action of the trial court.

### B.

On July 1, 1985 the district court judge suspended imposition of Miller's sentence and placed Miller on a five-year term of probation.[3] In the meantime, however, on June 28, 1985 Miller had filed a motion to set his conviction aside pursuant to 28 U.S.C. § 2255. The grounds he alleged were the ineffective assistance of trial counsel and his own incompetency to stand trial. Following hearings that addressed those grounds, the district court on July 11, 1985 denied that motion.[4] Miller timely appealed that order. 28 U.S.C. § 2107.

With his third lawyer (Mr. Carroll) in charge, Miller on August 14, 1986 filed a Motion for Reconsideration of the December 14, 1984 Order, which had denied him a new trial. Alternatively, his motion sought to supplement the record, alleging newly discovered evidence. On the basis of briefs, the district court on November 13, 1986 issued a certification of the District Court indicating that, upon remand of the Miller record from the Court of Appeals, it would grant the Motion to Reconsider and consider the case for a new trial. This court then remanded both appeals.

At an August 12, 1988 status conference, the district court judge granted Miller's original Motion for a New Trial pursuant to Fed.R.Crim.Pro. 33. The Government appealed, claiming that the trial court had no jurisdiction to order a new trial on the basis of Fed.R.Crim.Pro. 33.

### C.

This court in March 1989 determined that the district court had no jurisdiction to order a new trial under Fed.R.Crim. Pro. 33 because Miller's Motion for Reconsideration was filed out of time. *U.S. v. Miller*, 869 F.2d 1418, 1421 (10th Cir.1989). We predicated our holding on the nature of the new claims ("newly discovered evidence") Miller had raised.

Following this ruling, this court on May 2, 1989 returned both of Miller's pending appeals to active status and consolidated them. The result of the proceedings we have recounted is that we have before us: (1) the original direct appeal of Miller's underlying conviction for violating 18 U.S.C. § 1001 (at 84–2776); and (2) Miller's appeal from the denial of his motion brought under 28 U.S.C. § 2255 to set aside his conviction (at 85–2334).

### II.

Miller now rests his consolidated appeal solely on claims of ineffective assistance of counsel.[5]

In reviewing this consolidated appeal, we are to be guided, except if clearly erroneous, by the historical facts found by the district court judge, while our review of the ultimate legal issues is plenary. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1983) prescribes

---

**3.** Judge Carrigan, responding to evidence or at least claims of alcohol-induced aberrant behavior by Miller and claims of post-Vietnam stress (e.g., Tr. of Hearing on Defendant's Motion for Relief, July 10, 1985, at 7, 17, 70–75, 100–01) also ordered that Miller reside for 120 days in a community treatment center and that he take part in an alcohol treatment program as well as mental health counseling.

**4.** Tr. of Hearing on Defendant's Motion for Relief, July 11, 1985, at 149.

**5.** At the hearing of Miller's motion to vacate and set aside his conviction, the district court on July 11, 1985 denied Miller's claim of incapacity to stand trial. The district court also denied Miller's claim of incompetency of counsel. Miller has not raised any claim before us of his incapacity to stand trial. Nor has he raised any issue before us respecting the back-dating of tax documents.

our standard of review for attorney performance relative to the effective assistance of counsel. To succeed in an ineffective assistance of counsel claim, an appellant must show "deficiency plus prejudice." Accordingly, in regard to Miller's trial, we must answer the questions: (a) did Mr. Calder, Miller's trial attorney, provide Miller with that quality of counsel which *Strickland* has held to be "ineffective assistance of counsel" under the Sixth Amendment; and (b) but for the alleged deficiencies of his trial counsel, might Miller have been found not guilty?

Thus, the inquiry before us—in both Miller's direct appeal and in our review of his motion to set aside his conviction pursuant to 28 U.S.C. § 2255—is whether any or all of Miller's claims add up to ineffective assistance of trial counsel as defined by *Strickland* and recently construed by this court in *U.S. v. Rivera*, 900 F.2d 1462, 1472–1474, (10th Cir., 1990) (en banc). A mixed law and fact review such as *Strickland* obliges us to view the "totality of the evidence before the judge and jury" *Cuyler v. Sullivan*, 446 U.S. 335, 342, 100 S.Ct. 1708, 1714, 64 L.Ed.2d 333 (1980). In doing so, as another Court of Appeals has ruled,

> the presumption of correctness accorded the factual determinations of the state [trial] court ... applies only to the historical facts underlying the attorney's performance but not to the ultimate conclusion as to whether or not effective assistance has been rendered.

*Wycoff v. Nix*, 869 F.2d 1111, 1117 (8th Cir.1989) (citations omitted). *Accord, Laws v. Armontrout*, 863 F.2d 1377, 1381 (8th Cir.1988) (en banc), *Davis v. Kemp*, 829 F.2d 1522, 1537 (11th Cir.1987). *See also, U.S. v. Golub*, 694 F.2d 207, 212–14 (10th Cir.1982), *U.S. v. Crouthers*, 669 F.2d 635, 643 (10th Cir.1982), *Dyer v. Crisp*, 613 F.2d 275, 278 (10th Cir.1980).

In addition, insofar as we review Miller's habeas motion, as well as his direct appeal, we are instructed to be particularly deferential to the circumstances at the time of trial. As the Supreme Court has put it,

> The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential.

*Kimmelman v. Morrison*, 477 U.S. 365, 381, 106 S.Ct. 2574, 2586, 91 L.Ed.2d 305 (1986) (citing *Strickland*, 466 U.S., at 688–89; 104 S.Ct. at 2064–65).

Because the Sixth Amendment's right to counsel is the right to effective assistance of counsel, a conviction must be overturned where counsel's defense so "undermined the proper functioning of the adversarial system that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686, 104 S.Ct. at 2063–64. To succeed with such a claim, however, a defendant must show *both* that his attorney's performance fell below an objective standard of reasonableness and that but for counsel's inadequacies the result of the proceedings would have been different. 466 U.S., at 688, 694, 104 S.Ct. at 2068. As this court has put it, a defendant must "prove that his counsel's performance was [both] deficient [and] prejudicial," and he must do so in view of the strength of the government's case. *Rivera*, at 1474.

Application of this "deficiency-plus-prejudice" test must be predicated, however, on the presumption that counsel's conduct was reasonable and that it will be reviewed from a contemporaneous perspective, without excessive benefit of hindsight. On the basis of *Strickland* and the lower court record, which we have independently reviewed, we cannot say that Miller was deprived of the effective assistance of counsel. Examining Miller's claims, which we discuss below, we agree with the district court's July 1985 conclusion that Miller's trial may not have been "perfect," but it was "fair." [6]

---

6. Tr. of Hearing on Defendant's Motion for Relief, July 11, 1985, at 149. According to *Strickland*, "the ultimate focus of inquiry must be on the fundamental fairness of the proceeding...." 466 U.S. at 696, 104 S.Ct. at 2069.

### III.

Shortly after Miller's initial sentencing, evidence of certain mental and/or physical problems besetting Miller began to emerge. In particular, a court-ordered psychiatric examination arguably revealed that Miller had alcohol-related amnesia, and that he was subject to fantasizing and bouts of depression. Indeed, Miller's second attorney (Mr. Steinberg) hinged his unsuccessful June 28, 1985 motion to vacate and set aside the conviction on these grounds. Thus, Steinberg argued that Miller had been incompetent to stand trial *and* that Miller suffered from ineffective assistance of counsel. The former argument relied, in the first instance, on Miller's psychiatric and alcohol problems as grounds for Miller's incompetency. Steinberg additionally argued that Mr. Calder's failure to inquire adequately into these problems and then to raise them at trial constituted ineffective assistance of counsel, which required the setting aside of Miller's conviction.[7] Psychiatrists and other witnesses testified extensively on these issues before the district court in July 1985,[8] but Judge Carrigan found the claims factually and legally wanting, and, as earlier noted, denied Miller's motion.

### IV.

To substantiate his claim of ineffective assistance of counsel, Miller charges that trial counsel, Calder: (1) failed to investigate his client's mental condition, thereby sacrificing possible defenses; (2) failed to make requisite motions in the course of trial; (3) was inadequately prepared for his courtroom presentations, particularly for his opening; (4) failed to impeach allegedly vulnerable prosecution witnesses; and (5) failed to have Miller, whom he had put on the stand, clearly and unambiguously deny his guilt. We turn to each of these claims.

In regard to each of the claims alleged by Miller, we must " 'indulge a strong presumption' that the decision [of trial counsel] was based on 'sound trial strategy' " formulated at the time of trial. *U.S. v. Hall,* 843 F.2d 408, 413, (10th Cir.1988) (quoting *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065). In this connection also, we must defer to the district court judge's determinations made at the post-trial hearings of July 1985.

### A.

We have referred above (*supra* at n. 5) to Miller's earlier claim, rejected by the district court and not raised here, that Miller lacked the capacity to stand trial. Miller now claims that trial counsel Calder had a responsibility to ascertain that he, Miller, suffered from mental disorders or incapacities that affected his trial. *See* n. 3, *supra.* Miller charges that by failing to discover and investigate these matters, Calder allegedly forfeited possible defenses—namely that Miller was incapable of participating effectively in his own defense, and was incapable of forming the *mens rea* requisite for commission of the crime with which he was charged.

The government, in response, contends that such disabilities as Miller asserts, if they existed at all, were alleged for the first time in the course of his *post*-conviction parole report investigation, 18 U.S.C. § 4205(d). The government thus argues that Miller, for whatever reasons, and to his own detriment, did not come forward with this information until after trial and until after Calder's assistance as trial counsel had already been provided.

The adequacy or reasonableness of an attorney's action is necessarily conditioned by the defendant's own actions or inaction. Thus, Miller now faults Calder for failing to investigate his mental health and behavioral history. But, Miller has not established that Calder was even aware until after trial, when the judge ordered a probation report, that Miller had ever seen a psychiatrist. With the exception of those instances where a defendant's behavior or

---

7. *See* June 28, 1985 motion to vacate and set aside defendant's conviction, ¶¶ 7–11, vol. I, Ex. 10.

8. Indeed, most of the July 1 and July 10–11 hearings were devoted to this topic: *passim,* 7–50, 71–73.

demeanor should communicate to his counsel or the Court that the defendant suffers from a mental disability, incapacity or impairment, an investigation, such as the investigation that Miller claims his trial attorney failed to conduct, cannot be charged as a claim of "ineffective assistance of counsel" when the essential and foundational information required to trigger such an investigation is withheld from the defendant's attorney by the defendant himself. As this court has noted, "[t]he reasonableness of an attorney's decision not to conduct an investigation is directly related to the information the defendant has supplied." *Coleman v. Brown,* 802 F.2d 1227, 1233 (10th Cir.1986).

The Third Circuit has also held that counsel cannot be faulted for "failing to raise claims as to which the client has neglected to supply the essential underlying facts ... clairvoyance is not required of effective trial counsel." *Dooley v. Petsock,* 816 F.2d 885, 891 (3d Cir.1987). Thus, Calder cannot be held responsible for Miller's failure to inform him of the full import and breadth of his symptoms and claimed incapacities,[9] especially where some aspects lay beyond the scope of reasonable investigation. Counsel may only be held responsible for his own derelictions. Under the circumstances, it was not because he was derelict as counsel, that Calder, during a post-trial interview with the presentence investigator, became aware for the first time that Miller had seen a psychiatrist.[10]

Moreover, at the July 1985 hearings two psychiatrists testified. After the sentencing hearing on July 1, 1985 and the subsequent July 10 hearing on Miller's motion to set aside his conviction, the district court, having reviewed the psychiatric testimony of Miller's two psychiatric experts, found that neither doctor had "stated [an] opinion that the defendant [Miller] was not competent to stand trial ... that he was unable to understand the nature and object of the proceedings against him, that he was unable to consult with counsel, or that he was unable to assist in preparing his defense."[11] We will not disturb these findings. Nor has Miller, on whom the burden to do so rests, called our attention to anything in the record which would substantiate any claim that he did not have the requisite mental state to commit the offenses with which he was charged.

### B.

Miller also argues, in a slightly different guise, that his trial attorney Calder failed to make motions concerning Miller's mental health problems, and failed to move for continuances. We have discussed the issue of Miller's mental health problems above, and reject this claim of Miller's for the same reasons we have rejected his "failure to investigate" claim.

With respect to Miller's complaint that Calder did not move for continuances, the government responds that Calder made a normal range of motions for a trial of this nature. When this issue was raised at the July 1985 hearings, Calder testified that he abjured frivolous motions and because he was trying a bench, rather than a jury trial, groundless motions could backfire. The district court judge found credible and persuasive Calder's position that he "didn't feel that there were any motions that were necessary or appropriate other than the one I filed."[12]

---

**9.** It is significant that Judge Carrigan, after taking testimony from psychiatrists, found that Miller was capable of standing trial and assisting in his own defense. Judge Carrigan rejected the mental incompetency claims at that time. Tr. of Hearing on Defendant's Motion for Relief, July 11, 1985, at 149–50. This finding, which is not clearly erroneous, bears tangentially on Miller's claim that his counsel was ineffective in not investigating Miller's competency.

**10.** Tr. of Hearing on Defendant's Motion for Relief, July 10, 1985, at 71–73, 87, 93. This

hearing concerning Miller's mental health problems focusses on psychiatric treatment Miller received *after* initial sentencing.

**11.** Tr. of Hearing on Defendant's Motion for Relief, July 11, 1985, at 149; *see also* at 13, 40, 104.

**12.** *Id.,* at 121. In fact, the district court judge agreed that motions were often abused: "... we get them by the yard and bushel around here. And as it turns out seldom are any of them ever very serious." *Id.,* at 120.

The motion to which Calder was apparently referring was a motion that Calder recalled he had made seeking a continuance to the original trial date. Calder claimed that his objection "fell on deaf ears."[13] But, he could not remember whether such a motion for a continuance appeared in the pleadings.[14] Miller therefore contends that Calder "did not exercise the required diligence to ensure [that the motion] had been [made]."[15]

Even assuming that an actual motion had not been filed, we are not disposed to hold that the failure to make such a motion in the context of Miller's bench trial, or the failure of a trial court to grant such a motion, would give rise to a presumption that Calder was, within the ambit of the Sixth Amendment, ineffective as counsel for this reason. As this court has recently reconfirmed, a defendant's retrospective claims, that he would have fared better at trial if his trial counsel had filed more or different motions, requires evidence of resulting prejudice. *U.S. v. Rivera*, 900 F.2d 1462, 1472, 1473, 1474. (10th Cir.,1990) (en banc). *Cf. U.S. v. Cronic*, 466 U.S. 648, 661, 104 S.Ct. 2039, 2048, 80 L.Ed.2d 657 (1984) (discussing failure of district court to grant a continuance). Miller has failed to demonstrate any prejudice that he has suffered as a result of Calder's actions in this respect.

### C.

■ Miller alleges that trial counsel Calder was both inadequately prepared for his courtroom presentation and did not conduct himself effectively. Calder later acknowledged that, "surprised by the abruptness of the people resting," he was not prepared with his opening, which had been reserved until the start of Miller's case. Calder sought a recess to "set the strategy of the order of my witnesses, and the content ... of an opening statement." The record reveals that, after the recess, Calder called defense witnesses without making an opening.[16]

While counsel has the option of opening at a trial, and an opening may be deemed helpful, Miller has not made us aware of any authority that requires that an opening be made. Here, Calder, while he could have referred in an opening to evidence that he intended to produce, did produce such evidence at trial—through witnesses. Most importantly, Calder argued on Miller's behalf in summation on the basis of the evidence taken at trial. We do not condone foregoing any rights or options available to a defendant, but we cannot say that a strategic decision to eschew an opening constitutes—without more—ineffective assistance of counsel.

Our review of the record, and particularly of Calder's testimony taken at the July 10, 1985 hearing, satisfies us that Calder was sufficiently prepared for trial and performed adequately at trial. As Judge Carrigan stated in a collateral context, "... most trials are not perfect. I've never seen a perfect one yet."[17] There is, in fact, considerable substantive evidence, adduced at the July 10, 1985 hearing, establishing that Calder had undertaken significant trial preparation. The testimony reveals that Calder discussed witnesses and their usefulness to the defense with Miller. Calder spent over 100 pre-trial hours interviewing, preparing, researching and investigating. Calder appeared to have believed that Miller was innocent, and he formulated a trial strategy consistent with that belief. Evidently as a result of this belief, Calder and Miller considered, but rejected, a government plea bargain.[18]

---

**13.** *Id.,* at 74.

**14.** *Id.*

**15.** Appellant's Brief, at 14.

**16.** Trial Tr., Nov. 26, 1984, at 102–3.

**17.** Tr. of Hearing on Defendant's Motion for Relief, July 11, 1985, at 150.

**18.** Tr. of Hearing on Defendant's Motion for Relief, July 10–11, 1985, at 77, 75–80, 79, and 81. The trial transcripts also reveal that Calder cross-examined most of the government's witnesses, prepared exhibits, and sought to introduce evidence that he believed was exculpatory.

Although experience is obviously no guarantee of competent or effective representation, it cannot be irrelevant that Calder had experience as both a prosecutor and a defense attorney and had tried about 100 cases in each capacity. Calder had discussed with Miller whether to try Miller's charges to the court or to a jury, and Calder had prepared voir dire, discovery requests, and jury instructions.[19] Among other witnesses, Calder called to testify was the client whose Tax Court case led to the charges against Miller; another former secretary to Miller; another ex-employee of Miller; three character witnesses; and the IRS agent involved in the Tax Court case.[20] When the government called one of Miller's former secretaries as a prosecution witness, and sought to introduce evidence of Miller's back-dating other documents, not part of the indictment, Calder objected, and his objections were upheld.[21] *See, e.g., U.S. v. Rivera*, 900 F.2d at 1472–1473 (rejecting claims of ineffective assistance of counsel based on inadequate preparation and failure to make motions). The record does not sustain Miller's charge of inadequate preparation, presentation, and trial conduct.

**19.** *Id.,* at 63–70, 84–85, 123, and 79 respectively.

**20.** Trial Transcript, November 26–27, 1984, at 96–113, 116, 149, 120–25, 157–58, 192–96, respectively.

**21.** *Id.,* at 33–36.

**22.** As noted, at 995 and n. 2, *supra,* Miller was convicted at a bench trial on three counts of knowingly using false documents (deeds of trust and a Stipulation of Facts) in matters before the United States Tax Court.

The two secretaries testified that, on Miller's instruction, they had back-dated deeds of trust. In addition, the IRS attorney who had represented the IRS in the Tax Court proceeding testified as to the Stipulation.

Besides the testimony of its witnesses, the government submitted physical evidence. The chief exhibits, all bearing Miller's signature, consisted of two. deeds of trust for the profit-sharing plan and pension plan of one of Miller's clients, which were found by the trial court to be fraudulently back-dated. A pre-trial Stipulation of Facts prepared by Miller for the United States Tax Court also contained references to the deeds of trust that were later determined to be fraudulently back-dated. That Stipulation repeated and incorporated the false datings and

## D.

■ Miller next alleges that Calder failed to impeach government witnesses by discrediting them with instances of their own prior conduct.[22]

Testimony against Miller at trial was offered by two former secretaries. Miller claims that Calder's failure to attack their credibility left their testimony unimpeached and denied Miller a fair trial. More specifically, Miller charges that, although Calder was aware that one of these secretaries, Sandra Eddy, had once filed a false report of sexual assault,[23] Calder failed to use that information to attack her overall credibility.

The other secretary implicated in the back-dating, Kitty Longmire, was under investigation for theft and forgery at the time of Miller's trial. She was charged with use of a fictitious affidavit to persuade a bank to deposit into her own account a check made out to a client of Miller's.[24] Two months after trial, and during the pendency of Miller's first post-trial motions, Longmire pled guilty to one count of second-degree forgery and received a sus-

certifications of the deeds of trust. Tr. Tr. at 84–90; Govt. Exhibits 1–3.

**23.** Eddy had worked for Miller from June 1982 to March 1983. On Sept. 30, 1984, five days before Miller's indictment and two months before his trial, she filed charges of sexual assault against a former suitor. Subsequent to an investigation, she herself was charged with giving false information to a public official. On November 21, 1984, just three days before Miller's own trial, she signed a Motion for Deferred Judgment that allowed her to enter a nolo plea, which, following a mandatory psychiatric examination and 150 days of good behavior, would be vacated and the charges dismissed. Vol. I, Ex. 15.

**24.** Longmire, while still working for Miller, intercepted a U.S. Treasury check intended for one of Miller's clients and used a false affidavit and signatures to deposit it in her own account. Bank auditors became suspicious and reported the matter to the government. The government filed an Information and, shortly after Miller's trial, offered her a plea agreement, allowing her to plead guilty to one count of violating 18 U.S.C. § 1003 (fraudulent endeavor to cash a false or forged financial instrument).

pended sentence of two years. Here too, Miller charges that Calder failed to impeach her credibility and discredit her testimony by confronting her in cross examination with her illegal conduct.

The government responded to Miller's claim of ineffective assistance of counsel in failing to cross-examine Sandra Eddy regarding her illegal conduct, by asserting that such crossexamination would have been barred. The government relied on two cases of this court, *U.S. v. Turner,* 497 F.2d 406, 407 (10th Cir.1974) and *Tafoya v. United States,* 386 F.2d 537, 539 (10th Cir. 1967), which held that only previous convictions and not previous acts of misconduct which do not result in conviction may be used to impeach a witness's credibility.

The record discloses that Calder had apparently been aware of the fact that Eddy "had a prior false report of an alleged sexual assault on her." [25] However, nothing appears in the record to disclose whether Calder's choice not to examine Eddy in regard to this false report was a matter of strategy or of carelessness, and the burden in this respect, as it is in establishing all the purported deficiencies of counsel, must be carried by Miller. Moreover, absent Miller's demonstration of "how cross-examination [of Eddy on this topic] might have changed the outcome of the trial," a decision as to cross-examination, even a decision not to cross-examine at all, "could simply have been part of trial counsel's strategy." *U.S. v. Voigt,* 877 F.2d 1465, 1468 (10th Cir.1989).

We acknowledge that the government's reliance on *Turner* and *Tafoya* may well have been misplaced, because Fed.R.Evid. 608(b), adopted subsequent to those cases, would not require a conviction for purposes of impeachment, if, in the discretion of the court, the cross-examination of the witness as to the misconduct concerned the witness's credibility.[26] But that reliance, even

if mistaken, does not relieve Miller of the heavy burden of proof imposed upon him not only to establish that his counsel's performance in this respect was not strategic, but was unreasonably ineffective. That ineffectiveness, if such it was, must meet the standard for prejudice required for a different verdict to have resulted. *Strickland,* 466 U.S., at 688, 694, 104 S.Ct. at 2064–65, 2068.

Nor do we understand how secretary Longmire's problems with the law, which apparently had not yet surfaced at the time of Miller's trial, could have been used to affect her testimony. The record is unclear as to whether Calder knew she was under investigation at a time when any additional inquiry as to her conduct might have proved fruitful to Miller. The record is clear, however, that it was not until two months after Miller's trial that she pled guilty to fraudulently cashing a false or forged financial instrument, even though the Information charged her with having forged a check endorsement in the year 1982—before Miller's trial.

As previously noted, the mere failure to cross-examine a witness does not necessarily require a finding of ineffective assistance of counsel. *Voigt,* 877 F.2d at 1468. Moreover, in this case, that failure did not affect the substance of Longmire's testimony but could only have affected her credibility.

Of more significance, Miller has not sustained the *Strickland* burden of proving that Calder's representation, by failing to cross-examine Eddy or Longmire as to their misconduct, fell below the prevailing professional norm and that this failure prejudiced his defense. As this court has held, in addition to *Strickland's* "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," a reviewing "court need not determine whether counsel's perform-

---

**25.** Tr. of Hearing on Defendant's Motion for Relief, July 10, 1985, at 128.

**26.** Thus, as this court has put it, under Fed.R. Evid. 608(b):

   a defendant may impeach a Government witness by cross-examining him about specific

instances of conduct not resulting in conviction if such conduct is probative of the witness' character for truthfulness or untruthfulness.

*U.S. v. Morales–Quinones,* 812 F.2d 604, 613 (10th Cir.1987).

ance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *U.S. v. Jones*, 852 F.2d 1275, 1277 (10th Cir.1988) (citing *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069).[27]

### E.

■ Finally, Miller claims that during his own testimony he was never asked, in so many words, "do you deny the charges made against you?" Thus Miller states that he never had an opportunity to assert his innocence as to the charge of back-dating.

Miller reinforces this claim by referring to the court's colloquy with Calder after the defense had rested. Judge Carrigan at that time offered to let Calder reopen the defense's case because he, the Judge, did not recall that "any direct question [had been] asked as to the real charge here." Trial Tr. at 202. Miller also refers to a statement made by Judge Carrigan at a later status conference, held on August 12, 1988, where Judge Carrigan indicated he would give Miller a new trial. At that time, Judge Carrigan stated:

> ... as I recall, the defendant took the stand, but was never asked by his counsel whether he did these things. ... which just seemed highly unlikely in a competent defense of a criminal case, and with evidence from the two secretaries ... against him, and his not denying that evidence, that was crucial in my mind.

Tr. of Status Conference of August 12, 1988, at 4–5. Miller further claims that Calder could have called some rebuttal witnesses who might have testified to Miller's claims of innocence.[28]

The government responds by properly calling our attention to the principle that, when the record is silent as to the reason for counsel's decision, a reviewing court must " 'indulge a strong presumption' that the decision [of trial counsel] was based on 'sound trial strategy' " *U.S. v. Hall*, 843 F.2d 408, 413 (10th Cir.1988) (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065). The government also speculates that a direct question seeking a direct answer might not have been asked because Calder may have feared that Miller "would have committed perjury in response" to such a question.[29]

We will not indulge in speculating whether Miller would or would not have admitted or denied the charges made against him in so many words. Our review of the record discloses to us a consistent, albeit indirect, avowal of innocence on Miller's part with an attendant reciprocal indirect denial of the charges against him.[30] We are, of course, troubled by this aspect of Miller's appeal, particularly because of Judge Carrigan's later, revised assessment of the trial proceedings, which Judge Carrigan arrived at some four years after his initial ruling.

It is understandable that Miller on this appeal relies heavily on the August 12, 1988 Status Conference ruling of Judge Carrigan, which contained a certification to this court that, if we were to remand Miller's proceedings to the district court, Judge Carrigan would grant Miller a new trial. We have noted *supra*, at typescript 5 that Judge Carrigan had no jurisdiction over the Miller proceedings in 1988—nearly four years after trial—to consider Miller's

---

27. *See* note 22, *supra*.

28. Carroll, Miller's third counsel, claimed at this same August 12, 1988 status conference that Calder should have called as witnesses an FBI investigator, who would testify that Miller had denied his guilt. Carroll also asserted that a another former secretary of Miller's might have been subpoenaed to provide favorable testimony as to Miller's alleged office practices. The government argues that the testimony of the investigator would not have been admissible under Fed.R.Evid. 801(c) and 802 (hearsay) and that the record does not permit us to assess

those claims, which were first mentioned some four years after trial at the August 12, 1988 status conference. As with the other claims of ineffective assistance of counsel that we have discussed, this rebuttal witness claim of Miller's does not meet the *Strickland* standard.

29. Appellee's Brief, at 12. *Cf. Nix v. Whiteside*, 475 U.S. 157, 166–73, 106 S.Ct. 988, 993–97, 89 L.Ed.2d 123 (1986); *U.S. v. Rantz*, 862 F.2d 808, 811 (10th Cir.1988).

30. *See, e.g.,* Trial Tr. at 142–44, 186–7.

application. *U.S. v. Miller*, 869 F.2d 1418, 1421 (10th Cir.1989). However, even given Judge Carrigan's own change of position, we are not persuaded that his views, as formulated nearly four years after trial, should "trump" his own earlier determinations—determinations predicated on hearings held while the evidence, the trial, and the testimony of witnesses were all still fresh in his mind.[31]

*Strickland*, 466 U.S., at 690, 104 S.Ct. at, 2066, requires that we reject *hindsight* and assess the reasonableness of an attorney's performance at the time of trial. This principle, when considered together with our own review of the record and of Judge Carrigan's trial findings of November 1984 as well as his determination made in July 1985 that Calder was not ineffective, is of greater significance to us and more persuasive than Judge Carrigan's August 1988 certification.

There have been other instances where the effectiveness of counsel has been challenged by a defendant and in which troublesome actions or inactions of trial counsel have been identified. But, as we have earlier stated, we have held in such instances that "[a] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Jones*, 852 F.2d at 1277. Even if we were to hold that the failure to give Miller an opportunity to explicitly deny, rather than indirectly deny, the backdating of documents with which he was charged, exhibited a deficiency on Calder's part, the record as a whole does not establish that this one omission prejudiced Miller's claim of innocence and, thus, his defense. To succeed here, Miller must demonstrate that Calder's actions, singly or in gross, were so ineffective that a new trial would result in a verdict of not guilty. Our review of these proceedings satisfies us that Miller

has failed to carry his requisite burden in this respect. *See, Rivera, supra*.

V.

Thus, we answer the questions that we posed at the outset of this opinion (*supra* at typescript 6) by holding that Miller has not borne his required burden of proving that counsel's representation was unreasonable under prevailing professional norms and that, even if unreasonable representation were to be assumed, Miller had suffered insufficient prejudice to warrant a new trial. *Kimmelman v. Morrison*, 477 U.S. 365, 381, 106 S.Ct. 2574, 2586, 91 L.Ed.2d 305 (1986); *Strickland*, 466 U.S. at 688–9, 104 S.Ct. at 2064–5. Accordingly, we will affirm Miller's conviction at 84–2776 and the district court order which denied Miller's § 2255 application to set aside his conviction.

**31.** At Judge Carrigan's hearings of July 1, 10 and 11, 1985 numerous witnesses were interrogated and over 150 pages of testimony was taken. *Parks v. Brown*, 840 F.2d 1496, 1508–9 (10th Cir.1987); *rev'd on other grounds, Parks v. Brown*, 860 F.2d 1545 (1988) (en banc), *rev'd*

*sub nom, Saffle v. Parks,* —— U.S. ——, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990); *U.S. v. Barboa*, 777 F.2d 1420, 1422 n. 2 (10th Cir.1985) (fact-finding hearings on ineffective assistance claims not obligatory).