993 F.2d 1552
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Gregory Thomas WEIR, Defendant-Appellant.
 No. 92-8023.
 United States Court of Appeals, Tenth Circuit.
 May 10, 1993.
 
 1
 Before McKAY, Chief Judge, McWILLIAMS, Circuit Judge, and SAFFELS, District Judge*.
 
 
 2
 ORDER AND JUDGMENT**
 
 
 3
 DALE E. SAFFELS, District Judge.
 
 
 4
 The defendant-appellant Gregory Weir was charged and convicted of one count of aggravated sexual assault, 18 U.S.C. § 2241(a)(1), and was sentenced to 78 months imprisonment. The assault took place at Yellowstone National Park. We exercise jurisdiction under 18 U.S.C. § 3742 and affirm.
 
 
 5
 On the night of May 13, 1991, Jill Rice, a summer employee at Yellowstone National Park, reported that she had been raped at the Bitterroot Dormitory by an individual she knew as "Greg." It was eventually determined that the "Greg" she was referring to was the defendant, Gregory Weir. The defendant contended that Ms. Rice had consented to the sexual encounter.
 
 
 6
 The victim was examined that night by Dr. Daniel Hudgins who took various samples for a sexual assault kit. She was also examined several days later by Dr. Robert McGuire for evidence of the rape. Both physicians testified at trial. The defendant also consented to having various samples tested for the completion of a sexual assault kit on him. These two kits later were lost, along with the victim's clothing, although Jalene Griffin, forensic scientist with the Wyoming Department of Criminal Investigation, testified regarding the test results.
 
 
 7
 Also testifying for the government at trial was Linda Intfen, a Resource Specialist teacher from California, who discussed the victim's cognitive and academic functioning. Ms. Intfen was the victim's teacher for a time and described her as having a learning problem.
 
 
 8
 The defendant subpoenaed several individuals, two of whom did not appear because of the United States Marshal's inexplicable failure to serve the subpoenas. Only witness Michael Rowe was deemed critical by the defense. Although the defendant informed the court at the beginning of trial that the subpoenas had not been served, he did not seek further assistance of the court. The jury found the defendant guilty of one count of aggravated sexual assault.
 
 
 9
 The defendant appeals his conviction and first alleges his trial counsel was ineffective. The district court had occasion to address this issue below and we review the district court's finding of facts under the clearly erroneous standard. United States v. Miller, 907 F.2d 994, 996 (10th Cir.1990). The ultimate question of whether the defendant's trial counsel was ineffective is subject to plenary review. Id. The district court found that the defendant had the benefit of a reasonably competent attorney throughout the entire trial process.
 
 
 10
 It is well settled that the defendant bears the burden of showing that trial counsel's performance was deficient and that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). The test in assessing trial counsel's performance is one of objective reasonableness. 466 U.S. at 687-88. In addition, courts should avoid viewing trial counsel's tactical decisions with hindsight, and give deference to the strategy employed by defendant's attorney. Id. at 689. As we have stated, the reasonableness standard is exercising all of the "skill, judgment and diligence of a reasonably competent defense attorney." Osborn v. Shillinger, 861 F.2d 612, 625 (10th Cir.1988) (citations omitted). Because we agree with the district court that trial counsel in this case performed in all respects as a reasonably competent defense attorney, we need not reach the second prong of the Strickland test.
 
 
 11
 Generally the grounds asserted by defendant to challenge his trial counsel's performance are that counsel failed to employ experts to discredit the government's medical experts and the teacher who testified; that counsel failed to challenge the foundation of the state crime lab employee's expertise; that counsel did not introduce a transcript of a taped conversation between the defendant and one of the Rangers; and that counsel did not advise the trial court of the United States Marshal's failure to serve the subpoena on one of his witnesses.
 
 
 12
 We have examined the trial transcripts and the district court's order and find no error. Trial counsel effectively cross-examined all of the experts, interposed appropriate objections, and brought out the deficiencies of the testimony in his closing argument. Given the consistency of the medical testimony with the testimony of other government witnesses, including the victim, trial counsel did a competent job of attempting to bring out weaknesses in that testimony. In hindsight it might have been advisable to employ an expert for the defense, but failure to do so did not render counsel's performance ineffective.
 
 
 13
 Defendant contends that counsel should have attempted to introduce a tape between Ranger Love and the defendant to prove the defendant did not try to use an alias the night of the crime. Because of the concern that use of an alias might imply a guilty state of mind, it was important to the defendant that he show he had not employed an alias. Ranger Love testified at trial, however, that the defendant did not use the alias. The tape would not have added anything to the defense. Thus, counsel was justified in not attempting to utilize a tape which was apparently unintelligible for the most part.
 
 
 14
 The defendant also contended that trial counsel was ineffective in failing to seek the court's assistance to obtain service of his subpoena for witness Michael Rowe. The defendant admits this witness did not become important until rebuttal. Defendant filed an affidavit of Michael Rowe setting forth the substance of his testimony. While some of the testimony supported the defendant's explanation of the timing of his encounter with the victim, other portions contradicted the defendant's testimony in important respects. The contradictory testimony supported the testimony of several government witnesses. The failure of trial counsel to more vigorously seek the appearance of this witness cannot be the basis for a claim of ineffectiveness.
 
 
 15
 Although in hindsight trial counsel could have employed different strategies, his failure to do so did not render his performance ineffective.
 
 
 16
 The defendant next contends he was denied his Sixth Amendment right to compulsory process because the United States Marshal's office in Las Vegas, Nevada, failed to serve his subpoena on Michael Rowe. The defendant claimed the victim consented to having sex with him and a key to his defense was the timing of the events in question. The defendant contends the incident happened two hours earlier than claimed by the victim, which would give a two hour unexplained period of time between the incident and when the victim reported the rape. He contends Michael Rowe would have corroborated his story.
 
 
 17
 In order for the defendant to show a denial of his constitutional right to compulsory process, the defendant must show that the witness's testimony would have been both favorable and material. United States v. Valenzuela-Bernal, 458 U.S. 858, 867 (1982). Just showing he was deprived of the testimony of a certain witness is not sufficient to establish a constitutional violation. Id. Testimony is material if there is a reasonable likelihood it would have affected the judgment of the trier of fact. Id. at 873-74.
 
 
 18
 Two government witnesses, Joanna Mitchell and Jennifer Parker, testified that the defendant was in their room the night of the crime, from approximately 7:30 p.m. until 8:30 or 9:00 p.m. This corroborates the timing of the incident as testified to by the victim. The defendant, however, testified he did not have to work that day and was in his dormitory drinking beer until he went to dinner with Michael Rowe at about 6:30 p.m. The defendant further testified he left the dining room about 7:00 p.m. and saw the victim in her dormitory shortly thereafter. The victim, the defendant and Michael Rowe then drove back to Bitterroot Dormitory, where the defendant and Rowe lived, at about 7:30 p.m. The defendant testified the victim left his room by 8:30.
 
 
 19
 In Michael Rowe's affidavit, however, he stated he would testify that he and the defendant were in Mitchell's and Parker's room until they went to dinner, but did not return to the women's room after dinner. This testimony would have been contrary to the defendant's testimony of his whereabouts prior to dinner. Further, Rowe would have testified that he accompanied the defendant and the victim to Bitterroot Dormitory after dinner. Thus, Rowe would have corroborated part of the defendant's testimony, but contradicted it in other respects. In addition, the government had about five witnesses, including the victim, who placed the incident approximately two hours later than the time testified to by the defendant. Because of its contradictory nature, the testimony cannot be characterized as favorable and we find there is not a reasonable likelihood it would have affected the judgment of the trier of fact.
 
 
 20
 Finally, the defendant contends that his Fifth Amendment right to due process was violated by the loss of the rape kits and the victim's clothing. After testing by the Wyoming State Crime Lab, the evidence was mailed to the Park Rangers at Yellowstone National Park in accordance with policy and procedure. Due to the negligence of the postal service employees, however, the evidence was lost. The defendant concedes that there was no bad faith on the part of the government in the loss of the evidence. The defendant believes this evidence was critical to the defense because the sexual acts described by the victim were different than those described by the defendant, and the presence or absence of certain bodily fluids on the clothing or obtained from the rape kits might be exculpatory.
 
 
 21
 We have previously stated that loss or destruction of evidence turns on the principles set forth in California v. Trombetta, 467 U.S. 479 (1984), and Arizona v. Youngblood, 488 U.S. 51 (1988). United States v. Donaldson, 915 F.2d 612, 614 (10th Cir.1990). For a constitutional violation, the Court in Trombetta required that the exculpatory nature of the evidence be apparent before its loss or destruction and of such a nature that comparable evidence could not be obtained by other reasonable means. 467 U.S. at 489. The Court in Youngblood added the requirement, "that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." 488 U.S. at 58.
 
 
 22
 The defendant admits there was no bad faith on the part of the government involved in the loss of the evidence. While he argues the exculpatory nature of the evidence should have been apparent prior to its loss, we disagree. The most that can be said about the rape kits and the victim's clothing is that further testing may have provided useful evidence for the defendant. In the absence of a showing of bad faith on the part of the government, there can be no violation of due process.
 
 
 23
 AFFIRMED.
 
 
 
 *
 The Honorable Dale E. Saffels, United States Senior District Judge for the District of Kansas, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3