**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**February 28, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

MESA RITH, also known as
Jago Rith, also known as Mesa Jago,
also known as Rith Mesa,

Defendant-Appellant.

No. 04-4258
(D.C. Nos. 2:03-CV-864-TC &
2:98-CR-586-02-TC)
(D. Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **HENRY**, **McKAY**, and **MURPHY**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

---

[*]    This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Defendant Mesa Rith appeals from the district court's order denying his motion to vacate, set aside, or correct his sentence filed pursuant to 28 U.S.C. § 2255. This court granted a certificate of appealability (COA) on the issue of whether the district court erred in failing to conduct an evidentiary hearing on Mr. Rith's claim that he was denied his constitutional right to the effective assistance of counsel at his trial. We deny a COA on the remaining issues and affirm.

*Background*

Mr. Rith and two codefendants were charged with federal crimes for robbing a bank on the afternoon of November 24, 1998. One of the codefendants, Sonasi Pouha, entered a guilty plea and testified against the other two. At the conclusion of a jury trial, Mr. Rith and his codefendant Phoma Xayaso were convicted of armed bank robbery, and carrying and using a firearm during a crime of violence. *See United States v. Xayaso*, 45 F.App'x 843, 844 (10th Cir. 2002). Mr. Rith appealed his sentence, and this court affirmed. *Id.* at 846. He subsequently filed the underlying § 2255 motion. The district court denied relief without a hearing.

The district court accurately described the evidence presented at trial. Briefly, the evidence established that two men robbed the Zions Bank at gunpoint. They fled across the street into a residential subdivision where they were picked

-2-

up by a black Honda Accord, later identified as belonging to Mr. Xayaso, and driven to Mr. Pouha's house. Later, the FBI arrested Mr. Pouha and found his share of the money at his girlfriend's home. As noted, Mr. Pouha decided to assist the prosecution. In exchange for a favorable sentencing recommendation, he identified the other robber as Mr. Xayaso and the getaway driver as Mr. Rith.

At trial, the Pouhas' tenant testified that she saw Mr. Rith in the car as it dropped off Sonasi at the time of the robbery. Two of Mr. Rith's friends testified that they had planned the bank robbery with Mr. Rith and that Mr. Rith later told them that he drove the getaway car. Mr. Pouha's mother testified that Mr. Rith and an unidentified person came to the Pouha house on the afternoon of the robbery at 2:15 or 3:00 looking for Sonasi.

Mr. Rith testified in his own defense. He stated that on the day of the robbery he was at the residence of his girlfriend, Fongsamount "Tina" Chanthavong, assisting her and her family in arranging for medical care for Tina's brother, Daosadet "Daos" Chanthavong. On that afternoon, Daos was taken to the Taylorsville Instacare clinic, where he was diagnosed with leukemia and later transported to a hospital. Mr. Rith testified that he picked up Tina's brother Kongphet "Pit" Chanthavong from school that day, which let out at 2:10 p.m. Mr. Rith did not remember what time he arrived at the school.

Mr. Rith asserts that Tina and Daos, as well as three other members of their family, could have provided him with an alibi for the bank robbery. The witnesses did not appear at his trial, however, because they were not called to testify. During the trial, defense counsel explained to the judge that his investigators had failed to serve the subpoenas on the alibi witnesses, despite his direction to do so.

On appeal, Mr. Rith argues that (1) the district court improperly evaluated his claims under *Strickland v. Washington*, 466 U.S. 668 (1984), rather than *United States v. Cronic*, 466 U.S. 648 (1984); (2) his trial attorney's failure to investigate, prepare, and present his alibi defense was ineffective assistance of counsel, as was the attorney's failure to engage a competent investigator; (3) the district court unfairly and inaccurately found the evidence of guilt to be overwhelming simply because it was unopposed by the claimed alibi witnesses; (4) the district court failed to address his claim that his trial attorney was ineffective for failing to request a continuance in order to locate the alibi witnesses; and (5) the district court abused its discretion in refusing to hold a hearing on the § 2255 motion.[1]

_____

[1] Mr. Rith also argues that his attorney provided constitutionally ineffective assistance of counsel by failing to object to the court's enhancement of his sentence for obstruction of justice. He maintains on appeal that some argument could have dissuaded the district court from applying the enhancement, but he has

(continued...)

*Legal Standards*

"When reviewing a district court's denial of a § 2255 motion, we review questions of law de novo and questions of fact for clear error." *United States v. Harms*, 371 F.3d 1208, 1210 (10th Cir. 2004). We review the decision not to hold a hearing under an abuse of discretion standard. *Id.* Pursuant to § 2255, the district court must conduct a hearing "unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief." *United States v. Kennedy*, 225 F.3d 1187, 1193 (10th Cir. 2000) (quotation omitted). Accordingly, we evaluate Mr. Rith's claims to determine whether his "allegations, if proved, would entitle him to relief, and if so, whether the district court's denial of an evidentiary hearing was an abuse of discretion." *United States v. Lopez*, 100 F.3d 113, 119 (10th Cir. 1996).

Mr. Rith maintains that his attorney was presumptively ineffective because he failed to present any of his alibi witnesses. "[I]f counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself

---

[1](...continued)
made no showing or argument that the enhancement was improper. Therefore, he has also made no showing that his counsel provided ineffective assistance. In addition, the district court had no doubt that Mr. Rith committed perjury at his trial, *see* R. Doc. 20, at 12, so even if an objection had been lodged, it is highly unlikely that the sentence would have been different.

presumptively unreliable." *Cronic*, 466 U.S. at 659. To invoke *Cronic*'s presumption of prejudice, "the attorney's failure must be complete." *Bell v. Cone*, 535 U.S. 685, 697 (2002).

In this case, Mr. Rith claims that his counsel failed to investigate and present his alibi evidence; he does not claim that his counsel failed to oppose the prosecution throughout the trial as a whole. Accordingly, his attorney's alleged errors are "specific attorney errors" subject to analysis under *Strickland*, not *Cronic*. *Bell*, 535 U.S. at 697-98. Under *Strickland* , to establish that counsel provided ineffective assistance, a defendant must show both that his attorney's representation was deficient and that the attorney's substandard performance prejudiced him. 466 U.S. at 687. Mr. Rith bears the burden of proving that his counsel's performance was both deficient and prejudicial. *Kimmelman v. Morrison* , 477 U.S. 365, 381 (1986).

*Discussion*

Although Mr. Rith argues that he could have produced five alibi witnesses, he produced affidavits from only two of them stating that they would have appeared at this trial. Of those two, only one -- Pit -- could have provided testimony relevant to Mr. Rith's whereabouts at the time of the robbery: 2:17 p.m. Pit stated that on the day of the robbery, Mr. Rith picked him up from school at 2:15 and drove him home, arriving there at about 2:45 p.m. R. Doc. 2,

Ex. T, at 1.  At 3:15 p.m., Mr. Rith accompanied him and his family to the clinic with Daos.  *Id.*  The record makes clear that the driving time between the locations discussed herein was minimal.

The other proposed alibi witness who provided an affidavit was Phouthovong "Noy" Chanthavong.  She stated that she did not see Mr. Rith until she arrived at the hospital at about 7:00 or 8:00 in the evening, well after the 2:17 p.m. robbery.  R. Doc. 8, Attach. B, at 1.

The proposed testimony of the remaining three witnesses appears in the record as hearsay statements related by FBI agents or a private investigator.  Although a court is not required to consider hearsay statements submitted in support of a § 2255 motion, "[e]ven assuming this court could consider these affidavits, they fail to show prejudice."  *Neill v. Gibson*, 278 F.3d 1044, 1056 (10th Cir. 2001) (holding district court did not abuse its discretion in disregarding inadmissable hearsay affidavits presented to support habeas petition, and concluding that even if affidavits were considered, they did not show juror prejudice) (citation omitted).

The record contains statements made to the FBI by Taikham Chanthavong and Daos.  Taikham stated that Mr. Rith came to the Chanthavong home at noon and stayed there until the group traveled to the clinic at about 2:00 p.m.

R. Doc. 8, Attach. B, at 1. Because she did not speak English, her statement was given through her daughter. *Id.* at 2.

As for Daos, we do not consider his proposed evidence because the record indicates that he would not have been available to testify at Mr. Rith's trial, either because he was too ill or because he had died prior to the trial. *See* Suppl. R., Oct. 4, 2000, at 88; *see also* R. Doc. 2, Exs. J & K (motions to depose Daos because he was ill and might not be available to testify at trial). Mr. Rith's affidavit stating "upon information and belief," that Daos was alive at the time of his trial, R. Doc. 2, Ex. A, at 2, is insufficient to establish that Daos was available to testify at his trial. Moreover, it is undisputed that Daos was unavailable to testify at a hearing on the § 2255 motion.[2]

The fifth proposed alibi witness was Tina. Her proposed testimony is provided in a defense investigator's report of a conversation in July of 1999, eight months after the robbery. R. Doc. 2, Ex. E. Tina stated that she and Mr. Rith stayed the night at a Motel 6 and checked out at noon on the day of the robbery. Mr. Rith drove her home and then went to his own house. At about

---

[2] Even if Daos had been available to testify, his testimony would not have established Mr. Rith's alibi. Daos stated in the first of two statements to the FBI that Mr. Rith arrived at his residence between 3:00 p.m. and 4:00 p.m. on the day of the robbery. R. Doc. 2, Ex. C. In his second statement, made nineteen months later, he said that someone, probably Mr. Rith, was asked to go pick up Pit, whose school let out at 2:10, and that Mr. Rith returned with Pit. *Id.* Ex. N, at 1.

1:00, she paged him. He told her he would be at her house at 2:15. Mr. Rith arrived at 2:15, and he and Tina went to the home of one of Mr. Rith's friends. The friend was not at home, so they bought cigarettes and went back to Tina's house. At around 3:00, Mr. Rith went to pick up Pit from school, after which they all went with Daos to the clinic. Tina's mother Taikham Chanthavong joined them when she got off work at 5:00 p.m.

A careful review of Mr. Rith's alleged alibi evidence reveals only two witnesses who could have supported his claim that he was not at the bank robbery: Pit and Tina. Noy's statement that she saw Mr. Rith in the evening would not have supported Mr. Rith's alibi. Taikham's statement that Mr. Rith was at her home continuously from noon until they all went to the clinic conflicts with Mr. Rith's own statement, as well as with Tina's and Pit's. As noted above, Daos was unavailable to testify.

Tina's statement also conflicts with Mr. Rith's testimony. He stated that he was at Tina's house until he went to school to pick up Pit. He did not mention driving to a friend's and buying cigarettes.

As for Pit's statement that Mr. Rith picked him up from school at 2:15 p.m. (thus establishing that Mr. Rith could not have been robbing a bank at 2:17 p.m.),

this evidence, if adduced at trial, would have corroborated Mr. Rith's testimony.[3] But Pit's statement conflicts with the trial testimony of Shea Montiel and with Tina's statement. Ms. Montiel testified that she and Tina went to get Pit from his girlfriend's apartment that day. Tina stated that Mr. Rith picked up Pit from school, but not until about 3:00 p.m. In addition, employees of the Taylorsville Instacare clinic testified that Daos and his family did not arrive at the clinic before 3:30 p.m. This evidence demonstrates that Mr. Rith could have participated in the 2:17 p.m. bank robbery before going to the Chanthavong home.

We conclude that the district court correctly determined that Mr. Rith failed to establish prejudice due to his attorney's failure to present his alibi witnesses. The evidence against Mr. Rith was substantial. Only two of the proposed alibi witnesses, Pit and Tina, could have provided testimony to corroborate Mr. Rith's defense. But we have only an inadmissible hearsay statement of Tina's proposed testimony. Pit's affidavit was made too long after the robbery to be entitled to controlling weight. Consequently, we hold that Mr. Rith did not establish prejudice, particularly in view of the many contradictions presented by the proposed alibi witness statements. Therefore, Mr. Rith has not met his burden to show "a reasonable probability that, but for counsel's unprofessional errors, the

---

[3]     Pit's affidavit, dated September 7, 2000, was made well over two years after the robbery.

result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *accord United States v. Boone*, 62 F.3d 323, 327 (10th Cir. 1995). Because we hold that Mr. Rith has failed to establish prejudice under *Strickland*, we need not evaluate his counsel's performance. *Strickland*, 466 U.S. at 697.

Our conclusion that his counsel's alleged professional errors did not prejudice Mr. Rith also disposes of his claim that his attorney was ineffective for not requesting a continuance. Mr. Rith has established no prejudice for this failure. *See United States v. Miller*, 907 F.2d 994, 1000 (10th Cir. 1990) (rejecting ineffective counsel claim based on failure to file motion for continuance of trial because movant failed to demonstrate prejudice). Further, because we conclude that Mr. Rith has failed to meet his burden to show that his attorney provided constitutionally ineffective assistance, we also conclude that the district court did not abuse its discretion in denying him an evidentiary hearing. *See Lopez*, 100 F.3d at 121.

The judgment of the district court is AFFIRMED.  Issuance of a COA is denied on all claims not addressed herein.

Entered for the Court


Michael R. Murphy
Circuit Judge